Pen. & W.
1pw117
133    112

# BENJAMIN H. MULLIKEN, *against* BARNET AUGHIN-BAUGH and JOHN CLIPPINGER.

### IN ERROR.

A debt due to one, who is an applicant for the insolvent laws of Maryland, and for whom a provisional trustee has been there appointed, is not subject to a foreign attachment in Pennsylvania, it being in *gremio legis*.

A foreign attachment will lie in Pennsylvania, at the suit of a citizen of another state.

Quere—Whether a foreign attachment abates by the death of the defendant, after interlocutory and before final judgment.

THIS was a writ of error to the common pleas of Cumberland county, to remove the record of a judgment entered upon the following statement of facts, which, it was agreed, should be considered in the nature of a special verdict.

On the 20th of May, 1818, *Aughinbaugh* and *Clippinger*, resident citizens of the state of Pennsylvania, were indebted to *Fahnestock* and *Gaullagher*, for the use of *Henry Fahnestock*, in the sum of four thousand two hundred and seventy-three dollars and eighty cents, which was then payable to the said *Fahnestock* on the 20th May, 1819. On the 4th day of September, 1818, *Henry Fahnestock*, being then a resident of the city of Baltimore, in the State of Maryland, in pursuance of a law of that state, made application for the benefit of the insolvent laws, whereupon certain proceedings were had and done, certified copies of which are now exhibited,

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

and agreed to be considered as a part of this special verdict; (*prout same,*) of all which the plaintiff had notice.   On the 17th of December, 1818, the said *Henry Fahnestock*, being still a non-resident of the state of Pennsylvania, and then residing in Baltimore as aforesaid, a writ of foreign attachment was issued out of the court of common Pleas of Cumberland county, at the suit of the said *Benjamin H. Mulliken,* also a citizen of the city of Baltimore against the said *Henry Fahnestock*, by virtue whereof the sheriff of said county attached the said debt, owing by the said *Aughinbaugh* and *Clippinger* to the said *Henry Fahnestock*, and so returned the same to the court aforesaid, on the return day thereof: whereupon, at the third term, to wit, the 30th of August, 1819, on motion to the said court, judgment was entered in the said suit for the plaintiff.   Afterwards, and to the next term, to wit, November term, 1819, No. 170, a writ of inquiry of damages issued, at the suit of the said *Benjamin H. Mulliken,* against the said *Henry Fahnestock*, to the sheriff, who by an inquest, held on the 29th October, 1819, found that the debt due by the said *Henry Fahnestock* to the said *Benjamin H. Mulliken,* and for which the said foreign attachment had issued, was one thousand seven hundred and sixty-eight dollars and eight cents, all which was duly returned by the said sheriff to the said court, upon the return day of his said writ of inquiry of damages.   Whereupon, on the 23d day of December, 1819, and to the next term, to wit, January term, 1820, No. 162, a writ of *scire facias* was issued at the suit of the said *Benjamin H. Mulliken,* against the said *Aughinbaugh* and *Clippinger*, as garnishees of *Henry Fahnestock*, in the aforesaid foreign attachment, which said *scire facias* suit is the same upon the issue in which this special verdict is found.

On the 31st day of July, 1819, and to August term, 1819, No. 297, a suit was brought in the name of *Henry Fahnestock* and *Thomas Gaullagher*, late co-partners in trade, under the firm of *Fahnestock & Gaullagher*, for the use of *Henry Fahnestock*, and now for the use of *Charles W. Karthaus*, provisional trustee of the said *Henry Fahnestock*, against *Barnet Aughinbaugh* and *John Clippinger*, co-partners in trade, under the firm of *Aughinbaugh & Clippinger;* which suit was brought to recover from the said *Aughinbaugh & Clippinger*, the same debt of four thousand two hundred and seventy-three dollars and eighty cents, which had been attached as aforesaid at the suit of the said *Benjamin H. Mulliken.*  In this suit, among other things, the said *Aughinbaugh & Clippinger* set up as a defence and gave in evidence the said writ of foreign attachment, at the suit of the said *Benjamin H. Mulliken,* and other writs of foreign attachment at the suit of other plaintiffs.   Whereupon, on the 19th November, 1828, the following agreement or stipulation was made and entered upon the record of the said writ, to wit: "It is stipulated by the plaintiff by their counsel, that in the event of a

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

recovery in this case, it shall be considered in favour of the persons legally entitled to have the money, and the same to remain in court until it be determined whether the plaintiff or attaching creditors be entitled to receive it. Mr. *Carothers* and Mr. *Watts* appear for *Adam Konigmacher, Benjamin H. Mulliken, Jos. & J. Wilkins,* and *E. F. Hallowell,* the attaching creditors." "To this stipulation the defendants gave no consent." And afterwards, to wit, on the 22d January, 1829, the following agreement was made, and entered on the record.

"It is agreed between Mr. *Metzger,* counsel for the plaintiffs, and Messrs. *Carothers* and *Watts,* attorneys for the attachment creditors, that the verdict when given in this case is in no wise to effect the attaching creditors mentioned in a former stipulation: but that their rights shall be held as if no such verdict had been given." This agreement was made in open court upon the trial of the cause, when a verdict was then rendered for the plaintiff *Charles W. Karthaus,* for the original debt of four thousand two hundred and seventy-three dollars and eighty-cents, without interest.

It is further agreed that *Henry Fahnestock* died on the 　　 day of 　　 A. D. 1825, and that letters of administration were granted on his estate to the said *Charles W. Karthaus,* in the city of Baltimore, on the 27th day of August, 1829.

Upon the foregoing facts the question is, who is entitled to the money in the hands of *Aughinbaugh & Clippinger?* If the court should be of opinion that the plaintiff in this issue is entitled to recover, then judgment to be entered for the plaintiff in this suit, and for the plaintiffs in the other suits, which by agreement abide the event of this case, and in that event the verdict and judgment at the suit of *Fahnestock & Gaullagher,* for the use of *Charles W. Karthaus,* No. 297, August term, 1819, to stand as a security for the use of the said *Benjamin H. Mulliken,* and the other plaintiffs in foreign attachments, to wit, *A. Konigmacher, E. F. Hallowell,* and *Jos. & J. Wilkins,* according to the agreement made on the 17th November, 1828, and entered on the record of the said suit as before recited.

But if the court should be of opinion that the plaintiffs in said foreign attachments are not entitled to recover, then judgment to be entered for the defendants, and the said suit for the use of the said *Charles W. Karthaus,* No. 297, of August term, 1819, to be discharged from any incumbrance created by the said writs of foreign attachment, or by the before recited agreements of the 17th November, 1828, and 22d July, 1829.

It is further agreed that *Benjamin H. Mulliken* and *Jos. & J. Wilkins* were citizens of the city of Baltimore, in the state of Maryland, and that *Adam Konigmacher* was a citizen of Pennsylvania at the time when said foreign attachments were issued, to wit, on the 17th December, 1818.

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

In the decision of the within special verdict, the facts embraced therein, are to be passed upon and decided, and to have in every respect the same operation in law as if they had been presented duly for decision by pleadings or otherwise.

All the records and papers mentioned in the foregoing special verdict, are hereby agreed to be considered part thereof.

The record of the application of *Henry Fahnestock,* for the benefit of the insolvent laws, in the city of Baltimore, exhibited the following facts.

That in pursuance of " An act relating to insolvent debtors in the city and county of Baltimore," *Henry Fahnestock,* on the 4th September, 1818, applied to the Honourable *Walter Dorsey,* chief judge of Baltimore county, for the benefit of the insolvent laws, and the said judge referred his said petition, schedule and other papers to the " Commissioners of Insolvent Debtors," and fixed the first Saturday of March term, 1819, for the final hearing of said insolvent before the county court. The said commissioners appointed *Charles W. Karthaus* provisional trustee, to take charge of the effects of the said *Henry Fahnestock,* in pursuance of the said act, who entered into a bond in the penalty of one hundred thousand dollars, conditioned for the faithful performance of the duties.

It did not appear that any further proceeding was had in pursuance of said application, or that *Henry Fahnestock* ever afterwards appeared to prosecute his said application.

The court below, (*Reed,* president,) after delivering the following opinion, directed judgment to be entered for the defendants.

The attachment issued in case, and the judgment at the third term was *interlocutory;* a writ of inquiry to assess the damages issued, and was executed and returned—but *no final judgment,* was ever entered thereon. But a *scire facias* issued without such judgment. The omission to have final judgment was not a clerical default, but the neglect of the party; for such judgment could only be entered on motion, and such motion could alone proceed from the plaintiff. By his default, no final judgment was entered *when the defendant died;* whereupon the attachment abated. No writ of *scire facias* can therefore be sustained, nor could it regularly issue. Upon this statement of facts, and by the stipulation in the special verdict, every objection may be taken advantage of, without regard to the pleadings or issue.

Our opinion being decisive on this point, it may not be necessary to consider the other aspects of the cause: there are other points equally fatal to the plaintiff's right to recover.

The transfer of the note to the provisional trustee, under the insolvent laws of Maryland, was a *pledge* of the property for the use of the creditors of *Fahnestock,* generally, although the right of property or title remained in him, and though the proceedings

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

were never consummated by the appointment of a permanent trustee:—yet these proceedings were in force when the attachments issued, in December, 1818. If at that moment there was a legal impediment to the issuing of an attachment, its subsequent removal would not make good a writ which had improvidently issued.

Though *Karthaus* may have had no right to sue for the money, he had the possession of the note; and as the legal right of *Fahnestock,* himself, to dispose of it in any way, was suspended or taken away by law—so the law could not interpose to divest the interest which the general creditors had acquired in the pledge; until the proceeding, therefore, was *discontinued,* the property was locked up in the hands of the provisional trustee.

*Watts* and *Carothers* for plaintiff in error.

In the court below, three objections were made to the recovery of the plaintiff. 1st. That a foreign attachment cannot be sustained by one who is not a citizen of Pennsylvania. 2d. That the attachment abated by the death of *Fahnestock.* 3d. That the proceedings under the insolvent laws of Maryland, divested *Fahnestock* of his interest in the note, so as to make it not the subject of a foreign attachment.

On the first point. Although the preamble to the attachment laws recites an evil to the citizens of our own state, which it was designed to remedy; yet such a construction has been given to those laws as that every man, who sues for his claim in our courts, is considered *quo ad hoc* a citizen of Pennsylvania; and such a practice has been accordingly pursued, as it would be now unsafe to overturn. *Milne* v. *Morton,* 6 *Bin* 353.

Second. The circumstance of there having been no final judgment entered upon the return of the writ of enquiry of damages, was but a clerical omission, and one which ought not to prejudice the rights of the plaintiffs; the writ of *scire facias* against the garnishees treats it as a judgment, and it is not competent for another creditor of *Henry Fahnestock* to avail himself of this omission, which is, at all events, but matter of form. But after interlocutory judgment, the death of the defendant does not abate the writ of foreign attachment. In the case of *Fitch* v. *Ross,* 4 *Serg & Rawle,* 557, the supreme court have decided, that the death of the defendant, after final judgment, does not abate the writ, and that the personal representatives may be substituted, and may put in bail to dissolve the attachment; and the same reasoning which influenced the court in that case is perfectly applicable to this. That the declared object of the act was to prevent non-residents from withdrawing their effects from the state, leaving their debts unpaid; and this object would be defeated, if, after the plaintiff has run the tedious course of the law, and when he is about to reap the benefits of his pursuit, the death of the defendant dissolved all;

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

and his respresentatives would be at liberty to withdraw from the state, the effects which had been condemned to pay the judgment against him.

Third. The foreign attachment issued here, bound the money in the hands of *Aughinbaugh* and *Clippinger* which they owed to *Fahnestock*. By the law of Maryland, when an application is made by an insolvent debtor, and his papers are referred to the " Commissioners," a provisional trustee is appointed to take charge of the effects of the applicant while the proceeding is pending, and it is determined by the judicial decisions of that state, 2 *Harris & Gill. Rep.* 24, that such trustee is but a recipient, a care-taker of the property during the pendancy of the application, and until a permanent trustee is appointed: he cannot sustain an action to reduce the property of the applicant into his possesson. *Karthaus* was, therefore, but a care-taker of the *evidence* of the debt which *Aughinbaugh* and *Clippinger* owed to *Fahnestock*, and had no right under any circumstances, to claim the money due upon it. But inasmuch as it appears that *Henry Fahnestock* never took the benefit of the insolvent laws; but that what he did do, was merely to elude the grasp of his creditors, and never can result in any advantage to his creditors, it is difficult to discover why it should operate to render ineffectual a proceeding by one of his creditors, in our own state, by which his debt would be secured.

*Metzger*, with whom was *Miller* and *Penrose*, for defendant in error.

Process by attachment is not of common law origin, but is secured to the people by positive legislative enactments. Before the passage of the act of 1705, entitled " an act about attachments," the effects of absenting debtors, were not liable to their debts. The act referred to, was passed to remedy this evil. The preamble recites that " whereas the laws of this government have hitherto been deficient in respect of attachments, so that the effects of persons absenting, are not equally liable, with those of persons dwelling upon the spot, to make restitution for debts contracted or owing within this province, to *the great injury of the inhabitants thereof*," &c. Hence the inference is inevitable that the law was intended for the benefit of the people of this state exclusively. It was so considered by *Washington*, justice, in the case of *Fisher* v. *Comegua*, reported at large in *Sergeant on Attachments*, page 44. In that case the learned judge refers to the preamble, to ascertain whether a foreign attachment would lie in any case other than debt. " The mischief, as the preamble informs us, says he, was that the effects of absent persons, were not equally liable with those of persons dwelling on the spot, &c. to the injury of the *inhabitants* of Pennsylvania." " Surely," says the judge, " an *inhabitant* of Pennsylvania is not less injured by the want of a remedy," &c. It is no answer to the proposition, that a foreign attachment was sustained in the

(Benjamin H. Mulliken, *v.* Barnet Aughinbaugh and John Clippinger.)

case of *Milne* v. *Morton*, 6 *Bin* 353, although the plaintiff in the attachment was a citizen of New York. There the objection was not taken. It made no part of the argument of the case. The court was not required to give an opinion on it. Nor are we permitted to indulge in speculations on the subject. It is a statutory remedy, and should be construed strictly. According to the custom of London, the person, claiming its benefit, must reside within the city. Foreing attachment is an attachment of the goods of a foreigner, found within a liberty or city, to satisfy some creditor, within such city or liberty.

The attachment abated, by the death of *Fahnestock*, who died after interlocutory but before *final* judgment. In the case of *Ludlow* v. *Bigham*, 4 *Dall. R.* 47, it was stated in argument, that the defendant's death, after interlocutory judgment, destroyed the attachment. It was considered the settled law. Mr. *Dallas*, the able reporter of the case, adopts the argument as the law, and goes so far as to ask in a note, whether the death of the defendant, after final judgment, does not abate the writ. The case of *Fitch* v. *Ross*, 4 *Serg. & Rawle*, 562 does not militate against this principle. If the opinion, delivered by the court, in that case be carefully examined, it will be found to sustain the proposition. In that case the death was after final judgment. The court treated it as a final judgment, and throughout the judge's opinion, he refers to that circumstance, it being a final judgment, as justifying his opinion, that the attachment did not abate or dissolve, by the death of the defendant.

This is placing the law on its proper basis. By the final judgment a lien is created on the defendant's property. A simple contract debt is changed into a debt by judgment of law in his life time. Thus the law of distribution of an intestate's estate is not impaired. The plaintiff in the attachment does not obtain an undue preference. He is placed in the same situation with a vigilant simple contract creditor, who brings his action of debt, and obtains judgment against his debtor in his life time. Far different would it be, if the death of the party did not abate the attachment, under any circumstances; if death did not abate it after interlocutory, but before final judgment. The writ can only issue against an absent debtor. He has no knowledge of the proceedings. He is not represented in court or out of court. It is an *ex parte* proceeding altogether and the claim may be entirely groundless. Yet under these circumstances a judgment is obtained—for the debt? No, but to enable the plaintiff to issue his *scire facias* against the garnishee. By the judgment no debt is ascertained and fixed. It is merely interlocutory. *Serg. on Attachments*, 20. 2 *Arch. Prac.* 25, 79. And yet, if the position contended for on the other side be correct, the plaintiff in the attachment, having such a judgment,

(Benjamin H. Mulliken *v.* Barnet Aughinbaugh and John Clippinger.)

would sweep away all the assets, to the great injury of the rest of the defendant's creditors.

It appears by the proceedings had, under the insolvent laws of Maryland, that the note in question was returned by *Fahnestock*, in the list of his property, on the 4th September, 1818. On the same day, a provisional trustee was appointed by the commissioners of insolvent debtors, to take possession, for the benefit of his creditors, of all his property, estate and effects, books, papers, accounts, bonds, *notes* and evidences of debt. The attachment did not issue until the 17th day of December, 1818. Here then was such an assignment or transfer of the insolvent's effects, before the issuing of the attachment, as to divest him of his interest in the note, so as not to make it the subject of a foreign attachment. After the transfer, the payee in the note could not bring suit upon it, and appropriate it to his own use. He had pledged it for the benefit of his creditors generally. They had a direct interest in the legal and proper disposition of the money due upon it. They had a vested right, which could not be defeated by *Fahnestock*, his trustee, who held in trust for himself and other creditors, or by any other person. And yet, if the position taken by the other side be correct, we shall be presented with this strange anomaly in the administration of justice, that through the instrumentality of a court of law, money is recovered on a note of hand, in the custody of the law, which the owner himself could not recover. That a plaintiff in a foreign attachment, on *ex parte* proceedings, not much favoured, and often leading to great injustice, could coerce the payment of money which had been previously appropriated to other specific purposes. The law, however, is well settled that the plaintiff in an attachment, stands upon no better footing than his debtor. 3 *Bin. R.* 394, *U. States* v. *Vaughan.* It is equally well settled, that after the transfer of a chose in action, or any thing else, it ceases to be the object of a foreign attachment. 4 *Dall.* 279. 3 *Bin.* 394. *Serg. on Attach.* 80. 171. 181. 176. 177.

The opinion of the court was delivered by

GIBSON, C. J.—It is a principle both of British and American jurisprudence, that personal property has no locality in respect of the SUCCESSION, which is always according to the law of the domicil; and the rule is extended by the English courts even to CREDITORS. But in America, the rights of creditors *not owing allegiance to the country of the domicil,* are generally, if not universally determined by the *lex loci rei sitæ.* In the application of the general principle to cases of foreign bankruptcy, the British judges, while admitting the validity of an involuntary assignment, even as regards their own subjects, have inconsistently denied to the bankrupt his share of the benefit under the commission, by subjecting him to the debts of British creditors, from which the certificate purported to

be a discharge. (*Smith* v. *Buchanan,* 1 *East.* 6.) It surely would be more just to the bankrupt, as well as beneficial to the British creditor, to sustain an attachment of effects within the realm. The American courts act more consistently, if not more liberally, in giving effect to the commission as far as they can, without interfering with the claims of those who were not originally bound by it, on the score of allegiance; and this is, perhaps, all that foreign nations have a right to require, as comity is overstrained when it is bestowed at the expense of justice. In *Milne* v. *Morton,* (6 *Bin.* 361,) chief justice *Tilghman* has glanced at a distinction between things that are tangible, and therefore susceptible of actual locality, and things invisible, (consisting of debts,) of which he seems to suppose locality cannot be predicated; the accuracy of which, I may, with great respect for the opinions of that learned and excellent judge, be permitted to question. The English courts sustain the title of assignees under a foreign commission, on principles of courtesy, not right; while the preference which we give to the title of creditors, is founded, as we conceive, in duty to prevent foreign interefence with the rights of our citizens or others not owing allegiance to the foreign government, over property which accident, consistently with justice and the laws, has subjected to their power. It can, therefore, make little difference in principle, whether the existence of the property be actual or potential, provided recourse may be had to it under the process of our courts; or whether it be corporeal or incorporeal, provided it be a subject of judicial cognisance, as in either case it seems to me, a creditor would be bound by no transfer but that of the debtor himself. But the case at bar is free of difficulty on this or any other head, the attaching creditor being personally bound by the laws of Maryland, and consequently disabled from gaining an advantage inconsistent with those laws by any proceeding here. Whether, in the case of a creditor not thus bound, we should feel it a duty to exercise a greater degree of courtesy towards a sister state, than towards a country with which we are connected by no political tie, is a question about which we intimate no opinion.

Whether the property was bound by the proceedings in Maryland when the attachment was laid, is a distinct and material fact which ought to have been expressly stated, because not only the existence of a foreign law, but the construction which is part of it, is determinable, not by the court, but a jury.[a] There is, however, in the statement of the case, something like an agreement that the court shall pass on matter of fact, which may have been inserted to remedy this very defect. The plaintiff relies on the opinion of the court of appeals, delivered by chief justice *Buchan,* in *Brown* v. *Brice,* (2 *Harris & Gill,* 24.) in which it was ruled that the provisional trustee is a mere recipient of the property without power to assign it, or exercise any act of ownership in respect of it, but

[a] *See post, p.* 388.

(Benjamin H. Mulliken *v.* Barnet Aughinbaugh and John Clippinger.)

that of a bailee. And from this it is evident that he has but a qualified property. But of what value to the argument is it, that the ownership of the insolvent debtor was not divested, if the property were *in gremio legis?* And that it was, it is impossible from the nature of the case to doubt. The proceeding in cases of insolvency is a process of distribution among creditors; to accomplish which it is absolutely necessary that the law take possession of the fund. To this end, it is provided in the "Act relating to insolvent debtors in the city and county of Baltimore," passed by the legislature of Maryland, in 1816, that the provisional trustee " shall take possession for the benefit of the creditors of such insolvent debtor, of all property, estate and effects, books, papers, accounts, bonds, notes and evidences of debt." Surely against such possession the courts of Maryland would not permit a creditor to gain a preference by execution or otherwise; and if such preference could not be gained there, a creditor bound by the laws of that state, could use the process of the courts with no better success here.

The property was therefore not subject to attachment by an inhabitant of Maryland; not however because a foreign attachment may not issue at the suit of a non-resident, (for that has never before been doubted,) but because it was previously attached by the laws of Maryland, by which the plaintiff is bound. This decision of the preceding points, relieves us from deciding whether the attachment abated by the death of the defendant between interlocutory judgment, and the execution of a writ of enquiry of damages: a nice and critical question, which we would not determine without more consideration than we have had time to bestow on it.

                    Judgment affirmed.